UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ADMINISTRATIVE DISTRICT COUNCIL 1 OF ILLINOIS OF THE INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFTWORKERS, AFL-CIO,<br><br>          Plaintiff,<br><br>v.<br><br>PIOTR LELO, a/k/a PETER LELO, et al.,<br><br>          Defendants. | ) ) ) No. 14 C 9447 ) ) ) Judge Manish Shah ) ) Magistrate Judge Finnegan ) ) ) ) ) |

## PLAINTIFF'S MOTION FOR ENTRY OF
## DEFAULT JUDGMENT AND FINAL ORDER

Plaintiff Administrative District Council 1 of Illinois of the International Union of Bricklayers and Allied Craftworkers, AFL-CIO ("Union"), through its attorneys, respectfully moves pursuant to Fed.R.Civ.P. 55(b)(2) for entry of a default judgment and final order against Defendants Piotr Lelo, a/k/a Peter Lelo ("Mr. Lelo"), Beata Lelo ("Ms. Lelo"), Monika Urbaniak ("Ms. Urbaniak"), Keystone-1 Plastering, Inc. ("Keystone"), Chicago Renovations Group, Inc. ("Renovations"), and Chicago Group Renovations, Inc. ("Group") (together, "Defendants"). In support of this motion, the Union submits as follows:

**Jurisdiction and Parties**

1. This action is a suit under § 301 of the Labor-Management Relations Act, 29 U.S.C. §§ 141, 185, to enforce a labor arbitration award.

2. As set forth in the complaint, the Union is a "labor organization" within the meaning of 29 U.S.C. § 152(5), and maintains its principal place of business within this district.

3. Mr. Lelo is an individual who is an "employer" within the meaning of 29 U.S.C. § 152(2), lives within this district, is related by blood or marriage to Ms. Lelo and Ms. Urbaniak, at relevant times owned and operated Keystone and operated or helped operate Renovations and Group, and on information and belief had direct or indirect ownership interests in Renovations and Group. (Note: The essence of the assertions in ¶¶ 3-42 were all made in the Union's unanswered complaint. For convenience, the Union will omit the prefatory phrase "As set forth in the Complaint" from these paragraphs.)

4. Ms. Lelo is an individual who is an "employer" within the meaning of 29 U.S.C. § 152(2), lives within this district, is related by blood or marriage to Mr. Lelo and Ms. Urbaniak, at relevant times owned Renovations, and on information and belief had a direct or indirect ownership interest in Group.

5. Ms. Urbaniak is an individual who is an "employer" within the meaning of 29 U.S.C. § 152(2), lives within this district, is related by blood or marriage to Mr. Lelo and Ms. Lelo, at relevant times owned Group, and on information and belief had direct or indirect ownership interests in Renovations.

6. Keystone was, at relevant times, an "employer" within the meaning of 29 U.S.C. § 152(2), and an Illinois corporation in the plastering and masonry business that maintained its principal place of business and did business within this district, and has been dissolved.

7. Renovations was, at relevant times, an "employer" within the meaning of 29 U.S.C. § 152(2), and an Illinois corporation in the plastering and masonry business that maintained its principal place of business and did business within this district, and has been dissolved.

8. Group was, at relevant times, an "employer" within the meaning of 29 U.S.C. § 152(2), and an Illinois corporation in the plastering and masonry business that maintained its principal place of business and did business within this district, and has been dissolved.

**2007 Agreement and Collective Bargaining Agreements**

9. On or around January 11, 2007, Mr. Lelo signed a settlement agreement with the Union on behalf of himself personally and on behalf of Keystone ("2007 Agreement").

10. On or around January 12, 2007, Mr. Lelo signed a short form collective bargaining agreement with the Union on behalf of Keystone to govern terms and conditions of employment within the plastering trade ("Plaster CBA").

11. By their terms, the Plaster CBA and the 2007 Agreement have remained in effect since they were signed.

12. The Plaster CBA incorporates the substantive terms of the agreements negotiated from time to time between local affiliates of the Union and an employer association (the "Plaster Association"), and later between the Plaster Association and the Union itself (the "Plaster Association Agreement").

13. The Plaster Association Agreement provides, among other things, that employers must assign all work covered by the contract to members of the bargaining unit, pay specified wages and fringe benefit trust funds contributions on all such work, and report all work, and also provides that all disputes as to the meaning of or compliance with the labor agreement will be resolved by a joint arbitration board ("Plaster JAB").

14. On or around March 19, 2009, Mr. Lelo signed a short form collective bargaining agreement with the Union on behalf of Keystone to govern terms and conditions of employment for work within the bricklaying and masonry trade ("Brick CBA").

15. By its terms, the Brick CBA has remained in effect since it was signed.

16. The Brick CBA incorporates the substantive terms of the agreements negotiated from time to time between the Union and various employer associations (the "Brick Association Agreement").

17. The Brick Association Agreement provides, among other things, that employers must utilize eligible members of the bargaining unit to perform bargaining unit work, pay specified wages and fringe benefit fund contributions for such work, and report all work, and also provides that all disputes as to the meaning of or compliance with the labor agreement will be resolved by a joint arbitration board ("Brick JAB").

18. On or around July 13, 2011, Ms. Lelo signed a collective bargaining agreement on behalf of Renovations with Local No. 5 of the Operative Plasterers and Cement Masons International Association ("Local 5").

19. The contract between Renovations and Local 5 provided for Renovations' employees to perform work within the geographic and craft jurisdiction of the Union, but to do so under terms and conditions established by the contract with Local 5, including recognition of Local 5 as the employees' bargaining representative.

20. The collective bargaining agreements between the Union and the Plaster Association, and between Local 5 and the Plaster Association, provided at the relevant times that disputes as to the meaning of or compliance with those contracts would be resolved by a combined joint

arbitration board ("Combined JAB") comprised of appointees of the Plaster Association, Local 5, and the Union.

**2012 Arbitration Award, Suit, and Settlement**

21. By letter of December 9, 2011, the Union informed each of the Defendants of a grievance it initiated asserting that each of them is sufficiently related to Keystone and each other as to make each of them liable for the obligations undertaken by Keystone in its labor contract with the Union and as to bind each of them, whether as a corporation or personally, to that contract and make each responsible for all violations of it by one another.

22. By letter of January 5, 2012, the Union provided each of the Defendants with notice of a hearing before the Combined JAB that would be held on January 26, 2012, to resolve that grievance.

23. The hearing before the Combined JAB took place as scheduled on January 26, 2012, with representatives of the Union and affiliated fringe benefit trust funds appearing in support of the grievance, with nobody appearing on behalf of the Defendants in opposition, and with the arbitrators being provided with copies of a letter from Mr. Lelo that was dated January 25 and was apparently left at the Union's offices on the morning of the hearing.

24. After receiving explanations as to how the grievance and hearing notice were provided to the Defendants, and information about the residences of the Defendants and the relationship among them, the arbitrators decided to proceed with the hearing.

25. The arbitrators received copies of the charges and heard arguments, testimony, and evidence presented by the Union, asked the Union representatives questions and received their

answers, read the letter from Mr. Lelo, and examined various documents that were presented; and then considered the case and rendered their decision.

26. The arbitrators subsequently issued a written decision (the "2012 Award").

27. The 2012 Award explained that based on the evidence presented, each of the Defendants was found to be "one and the same for purposes of their collective bargaining agreements" and all were found to be bound to the contract Mr. Lelo signed on behalf of Keystone and responsible for violations of that agreement by themselves and each other, and the arbitrators further found that (1) Keystone and Mr. Lelo personally continued to be responsible for their contract and all violations since 2007, (2) Keystone and Mr. Lelo were also responsible for all violations the other Defendants had committed since Renovations and Group began operating, (3) Ms. Lelo, Ms. Urbaniak, Renovations, and Group were each responsible for all violations by themselves and each other since July 1, 2011, and (4) Ms. Lelo, Ms. Urbaniak, Renovations, and Group were also each responsible for the obligations from before that date of Keystone and Mr. Lelo under both their collective bargaining agreement with the Union and the separate agreement.

28. The 2012 Award also ruled that it would be a violation of the contract to which each of the Defendants was found bound for any of them to perform any work within the scope of the contract Mr. Lelo signed for Keystone with the Union, and that the Union could bring a further claim if it chose to do so in order to seek additional damages for further performance of work.

29. The Union served the 2012 Award on each of the Defendants.

30. The Defendants failed to comply with the 2012 Award and the Union filed suit in the United States District Court for the Northern District of Illinois against each of them to enforce that award, with the matter designated as Case No. 12 C 3995 ("2012 Suit").

31. In order to resolve the 2012 Suit, the Union and the Defendants entered into a settlement agreement, effective September 17, 2012 ("2012 Settlement").

32. The 2012 Settlement articulated the parties' agreement that the Union is a "labor organization" within the meaning of 29 U.S.C. § 152(5), that each of the Defendants is an "employer" within the meaning of 29 U.S.C. § 152(2), and that the settlement agreement was an agreement between employers and a labor organization within the meaning of 29 U.S.C. § 185.

33. Pursuant to the 2012 Settlement, the Union voluntarily dismissed the 2012 Suit and the case was terminated effective October 3, 2012.

34. By virtue of the 2012 Settlement, each of the Defendants agreed he, she, or it was required to make various payments to the Union, that all were prohibited from performing any work within the Union's geographic and craft jurisdiction until they had made all payments and provided a bond or cash bond in the minimum amount of $50,000.00, that each would be liable for any violations by any of them, that any disputes regarding the meaning of or compliance with the agreement would be resolved pursuant to the applicable provisions of the then-current Brick CBA, and that service of any notices, awards, process, or any other documents could be made through a designated agent for receipt of service or on Mr. Lelo, Ms. Lelo, or Ms. Urbaniak, and that any such service would be deemed valid service on each of them.

35. By letter of March 27, 2014, the Union informed the Defendants that a hearing would be held before the Brick JAB to consider a request that Mr. Lelo had made that a lien on his home be lifted and to consider questions raised by the Union and various fringe benefit trust funds ("Funds") about compliance by the Defendants with their obligations under the 2012 Settlement and the collective bargaining agreements.

36. The hearing was held before the JAB as scheduled on April 9, 2014, with a representative of the Funds appearing for them, two representatives of the Union and the Union's lawyer appearing for it, and Mr. Lelo and the lawyer for the Defendants appearing for them.

37. The parties presented their positions, evidence, and arguments on all matters before the arbitrators.

38. After hearing the presentations, the arbitrators recessed to consider the case, returned to announce their decision, and subsequently issued a written award ("2014 Award"), a copy of which is attached as Exhibit A.

39. The 2014 Award found the Defendants had performed 2,280 hours of covered work in violation of the 2012 Settlement and the collective bargaining agreements, and ordered them to pay a total of $159,675.60 in damages to the Funds, the Union, and a local affiliate of the Union; ordered them to pay interest at the rate of 10% a year on the damages from April 9, 2014, until payment is made; ordered them to reimburse all legal fees and costs incurred by the Union and/or the Funds starting with the date the award was mailed; and ruled that the lien on Mr. Lelo's property would not be lifted.

40. The Union served the 2014 Award on the Defendants on July 22, 2014, along with a letter urging them to comply with the Award, making service through their authorized agent for receipt of service, through the attorney who represented them at the hearing, and by mailing copies to them at the address at which it had previously corresponded with them; and each of the Defendants received service of the Award in one or more of the agreed methods no later than July 24, 2014.

41. Notwithstanding their obligations under the 2014 Award, none of the Defendants has complied with it.

42. The Defendants' failure to abide by the 2014 Award is a breach of the collective bargaining agreements and the 2012 Settlement to which each of them are bound.

**Default**

43. As set forth in the Return of Service forms filed with the Clerk on December 11, 2014, the summons and complaint were served on each of the Defendants through personal service on the agreed agent for service for each, on December 5, 2014, making their answers or responsive pleadings due on December 26.

44. None of the Defendants has answered or filed a responsive pleading.

45. The Union seeks an order enforcing the Award, requiring the Defendants to make the payments as ordered in the Award and to comply with the other provisions of the Award, and providing an appropriate judgment.

46. Even if the Defendants had answered, it would be virtually impossible for them to have presented a meritorious defense for at least two reasons. First, labor arbitration awards are granted the highest level of deference that can be imagined. *See, e.g., United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593 (1960); *United Paperworkers International Union v. Misco, Inc.*, 484 U.S. 29, 41 (1987); *Sullivan v. Lemoncello*, 36 F.3d 676 (7th Cir. 1994); *Local 879, Allied Industrial Workers v. Chrysler Marine Corp.*, 819 F.2d 786, 789-90 (7th Cir. 1987). Second, the Defendants have allowed the statute of limitations to run and therefore have waived any right they would otherwise have to challenge the 2014 Award or to defend against an enforcement action based on any claims they could have presented in a timely challenge. *Chauffeurs, Teamsters,*

*Warehousemen, and Helpers, Local Union No. 135 v. Jefferson Trucking Co.*, 628 F.2d 1023, 1027 (7th Cir. 1980), *cert. denied*, 449 U.S. 1125 (1981); *International Union of Operating Engineers, Local 150 v. Centor Contractors, Inc.*, 831 F.2d 1309, 1311 (7th Cir. 1987); *Sullivan v. Gilchrist*, 87 F.3d 867, 871 (7th Cir. 1996).

**Monetary Judgment**

47. The three components of the monetary judgment the Union seeks are the underlying damages, interest, and reimbursement of the fees and costs, all as provided for in the 2014 Award.

48. As set forth in the complaint, and shown in the 2014 Award, the underlying damages assessed by the arbitrators were $159,675.60.

49. The 2014 Award provided for 10% annual interest on the damages from April 9, 2014 through the date of payment, which comes to $11,975.67 through January 9, 2015.

**Fee and Cost Reimbursement**

50. The fees and costs for which the Union seeks reimbursement total $4,139.00, comprising $3,564.00 for fees and $575.00 for costs.

51. As of the completion of this motion and the related documents, the Union's lawyer has devoted a total of 12.85 hours to this matter, and anticipates devoting at least two more hours to the case after the motion and related papers are completed. This motion is accompanied by a declaration from the Union's lawyer, which describes and categorizes the work. Exh. B, ¶¶ 5, 7.

52. As set forth in the attached declaration, the Union's lawyer actually performed the work for which reimbursement is sought, except for the two hours of anticipated future work; and did so based on a professional judgment that such work was necessary to represent the interests of his client. *Id.*, ¶ 6.

53. As is also set forth in the attached declaration, the Union and Benefit Funds have shared the fees and costs. *Id.*, ¶ 8.

54. The Union's lawyer charges the Union and the Funds $230.00 an hour and $250.00 respectively for work of this sort, for an average hourly rate of $240.00, which the Union respectfully submits is neither unreasonable nor excessive in light of his skill and experience. *Id.*, ¶¶ 9-10.

55. The Union also seeks recovery of $575.00 in costs, comprising the filing fee, the fee for service of process charged by the service agency, and the set cost figure charged for paralegal time for three electronic filings. *Id.*, ¶ 11.

**Basis for all Relief Established in Exhibits**

56. The basis for all relief requested is stated in the 2014 Award attached as Exhibit A, and in the declaration attached as Exhibit B. Accordingly, the Union respectfully submits that all the information needed to justify entry of a final order is presented here, and that no useful purpose would be served by requiring a prove-up hearing or further proceedings.

WHEREFORE, the Union respectfully asks the Court to grant its motion and enter judgment against the Defendants, jointly and severally, in the form attached or otherwise, for $175,790.27, and ordering them to pay interest at 10% annually on $171,651.27 of that amount from

January 10, 2015, through the date of payment, and interest at the statutory rate on the remaining $4,139.00.

Respectfully submitted,

/s/ Barry M. Bennett
Attorney for
Administrative District Council 1 of Illinois
of the International Union of Bricklayers
and Allied Craftworkers, AFL-CIO

Barry M. Bennett
DOWD BLOCH BENNETT & CERVONE
8 South Michigan Avenue, 19th Floor
Chicago, Illinois  60603
(312) 372-1361